Matter of Abigail M. A. (James A.) (2023 NY Slip Op 06737)

Matter of Abigail M. A. (James A.)

2023 NY Slip Op 06737

Decided on December 27, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 27, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
WILLIAM G. FORD
DEBORAH A. DOWLING
LOURDES M. VENTURA, JJ.

2022-09055
 (Docket Nos. N-629-21, N-630-21)

[*1]In the Matter of Abigail M. A. (Anonymous). Orange County Department of Social Services, respondent; James A. (Anonymous), appellant. (Proceeding No. 1.)
In the Matter of Hannah A. A. (Anonymous). Orange County Department of Social Services, respondent; James A. (Anonymous), appellant. (Proceeding No. 2.)

Samuel Coe, White Plains, NY, for appellant.
Richard B. Golden, County Attorney, Goshen, NY (Peter R. Schwarz of counsel), for respondent.
Kelli M. O'Brien, Goshen, NY, attorney for the child Abigail M. A.
Gloria Marchetti-Bruck, White Plains, NY, attorney for the child Hannah A. A.

DECISION & ORDER
In related proceedings pursuant to Family Court Act article 10, the father appeals from an order of fact-finding and disposition of the Family Court, Orange County (Victoria B. Campbell, J.), dated October 20, 2022. The order of fact-finding and disposition, after fact-finding and dispositional hearings, inter alia, found that the father neglected the child Abigail M. A. and, in effect, that the father derivatively neglected the child Hannah A. A., and placed the child Abigail M. A. in the custody of the Commissioner of Social Services of Orange County until the completion of the next permanency hearing.
ORDERED that the order of fact-finding and disposition is modified, on the law and the facts, by deleting the provision thereof, in effect, finding that the father derivatively neglected the child Hannah A. A., and substituting therefor a provision denying that branch of the petition which alleged that the father neglected the child Hannah A. A. and dismissing that portion of the proceeding; as so modified, the order of fact-finding and disposition is affirmed, without costs or disbursements.
The father and the mother, who were previously married, have two children together, one born in 2007 and the other born in 2010. Following their divorce, they shared joint residential custody of the children. However, after the younger child raised concerns about the mother's mental health in May 2020, the parents agreed that the father would have residential custody of the younger child and the mother would have residential custody of the older child. Thereafter, in February 2021, [*2]the older child also became concerned with the mother's mental health as well as the resulting effect on the older child's own safety. A caseworker employed by the Orange County Department of Social Services (hereinafter DSS), upon learning of the older child's concerns, contacted the local police to conduct a welfare check. After doing so, the police brought the older child to a local police station. A relative ultimately picked her up from the police station, and the older child then began residing with that relative.
In March 2021, DSS commenced these related proceedings pursuant to Family Court Act article 10, alleging, inter alia, that the father neglected both children. The Family Court thereafter conducted a fact-finding hearing, receiving testimony over the course of three days between September 2021 and June 2022. By order of fact-finding and disposition dated October 20, 2022, the court, among other things, found that the father neglected the older child and, in effect, that he derivatively neglected the younger child. The father appeals.
"At a fact-finding hearing in a child protective proceeding pursuant to Family Court Act article 10, the petitioner has the burden of establishing that the subject child has been abused or neglected by a preponderance of the evidence" (Matter of Kamaya S. [Zephaniah S.], 218 AD3d 590, 592 [internal quotation marks omitted]). "To establish neglect of a child, the petitioner must demonstrate by a preponderance of the evidence, (1) that the child's physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired, and (2) that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Matter of Chloe. P.-M. [Martinique P.], 220 AD3d 783, 784 [internal quotation marks omitted]). "Courts must evaluate parental behavior objectively" by considering whether "a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances then and there existing" (Matter of Cruz W. [Jacki W.], 218 AD3d 782, 783).
Here, the Family Court's finding that the father neglected the older child was supported by a preponderance of the evidence. The evidence adduced at the fact-finding hearing revealed, among other things, that the father refused to pick up the older child, then only 13 years old, from a police station after the child left the mother's home due to the child's concerns with the mother's mental health, even though the father admittedly knew that the child might be forced to sleep at a teen shelter without his assistance. His refusal to assist the older child was motivated in part by his "ang[er]" about purported lies she had told about him when she was merely 11 years old. By the time the father testified at the hearing in June 2022, he had not seen the older child in approximately two years and had made no efforts to visit her. He testified that he did not want her to live with him, nor did he have any interest in therapy to potentially repair the relationship. The evidence at the fact-finding hearing therefore demonstrated that the father willingly abdicated his parental obligations and neglected the older child (see Matter of Marques B. [Eli B.], 133 AD3d 654, 654-655; Matter of Nyia L. [Egipcia E.C.], 88 AD3d 882, 883).
Contrary to the father's contention, under the circumstances of this case, the Family Court's failure to ensure that the father validly waived his right to counsel on the first day of the fact-finding hearing does not warrant reversal. "A respondent in any proceeding under article 10 of the Family Court Act has both a constitutional and a statutory right to the assistance of counsel" (Matter of Cecile D. [Kassia D.], 189 AD3d 1036, 1037 [internal quotation marks omitted]; see Matter of Lherisson v Goffe, 198 AD3d 965, 966). However, "[a] party may waive that right and proceed without counsel provided he or she makes a knowing, voluntary, and intelligent waiver of the right to counsel. To determine whether a party has validly waived the right to counsel, a court must conduct a searching inquiry to ensure that the waiver has been made knowingly, voluntarily, and intelligently" (Matter of Mercado v Arzola, 212 AD3d 815, 816 [alterations, citations, and internal quotation marks omitted]). "While there is no rigid formula to be followed in such an inquiry, and the approach is flexible, the record must demonstrate that the party was aware of the dangers and disadvantages of proceeding without counsel. For example, the court may inquire about the litigant's age, education, occupation, previous exposure to legal procedures[,] and other relevant factors bearing on a competent, intelligent, voluntary waiver" (Matter of Lherisson v Goffe, 198 AD3d at 967 [citation and internal quotation marks omitted]). "The deprivation of a party's fundamental right [*3]to counsel in a custody or visitation proceeding is a denial of due process which requires reversal, regardless of the merits of the unrepresented party's position" (Matter of Tarnai v Buchbinder, 132 AD3d 884, 886 [internal quotation marks omitted]).
Here, the father was represented by retained counsel at multiple appearances before the Family Court prior to the fact-finding hearing. At a conference held on June 9, 2021, the father appeared pro se, informing the court and the other parties that he had discharged his attorney. Upon inquiry from the court, the father indicated that he did not "know how to prosecute a case," and the court advised him, among other things, "to get an attorney." Thereafter, on September 27, 2021, the parties appeared for the fact-finding hearing (hereinafter the September 2021 hearing date), and the father was again without counsel. The court began the hearing and received witness testimony. During the proceeding, the father indicated that he had contacted the Legal Aid Society for representation but was advised that he did not qualify for appointed counsel. On December 14, 2021, the next scheduled hearing date, the court appointed counsel to represent the father due to the court's concerns about the father potentially cross-examining the older child. The court then adjourned the hearing without receiving witness testimony to allow the father's counsel time to obtain the transcript from the prior hearing date and to then determine whether he wished to cross-examine DSS's social worker. For the remaining two days of the hearing, the father was represented by counsel.
As the father correctly contends, before beginning the hearing on the September 2021 hearing date, the Family Court "failed to conduct a searching inquiry to ensure" that his waiver of his right to counsel was "made knowingly, voluntarily, and intelligently" (Matter of Mercado v Arzola, 212 AD3d at 816 [internal quotation marks omitted]). Among other reasons, the court failed to sufficiently "warn [the father] of the risks of proceeding pro se or apprise him of the importance of a lawyer in the adversarial system" (People v Baines, 39 NY3d 1, 7; see Matter of Cerquin v Visintin, 118 AD3d 987, 989). Nonetheless, under the particular circumstances of this case, the court's error does not warrant reversal and remittal (see Matter of Tarnai v Buchbinder, 132 AD3d at 887). Since the testimony offered in the period in which the father was represented by counsel was sufficient to establish that he neglected the older child, the court's failure to ensure that he validly waived his right to counsel at the September 2021 hearing date could not have affected the ultimate outcome of the proceeding relating to that child (see People v Wardlaw, 6 NY3d 556, 559-561; People v Brooks, 200 AD3d 904, 904-905). In any event, the court cured its error by appointing counsel for the father for the remainder of the hearing and affording his counsel the opportunity to cross-examine the DSS social worker who testified at the September 2021 hearing date (see Canizio v New York, 327 US 82, 86-87; People v Sinclair, 28 AD2d 183, 184).
Finally, as effectively conceded by the petitioner, the preponderance of the evidence did not support a finding that the father derivatively neglected the younger child (see Matter of Katherine L. [Adrian L.], 209 AD3d 737, 740; Matter of Nevetia M. [Tiara M.], 184 AD3d 836, 838).
DUFFY, J.P., FORD, DOWLING and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court